861 P.2d 701

**CITY OF PHOENIX**

v.

**PAPER DISTRIBUTORS OF ARIZONA, INCORPORATED.**

**No. TX 93–00068.**

Tax Court of Arizona.

Oct. 20, 1993.

Phoenix City Atty. by James H. Hays, Phoenix, for plaintiff.

Lewis and Roca by Michael G. Galloway, Phoenix, for defendant.

## OPINION

SCHAFER, Judge.

The issue presented in this case is whether a paper distributor's sales of paper products to restaurants are sales for resale which fall outside the scope of the "sales" tax provision of the Phoenix City Code.

## FACTS

■ Paper Distributors of Arizona ("Taxpayer") is a wholesale distributor of paper and plastic products, such as bulk paper, paper towels, and disposable food service items including paper bags, sandwich wrappings, paper cups, and plastic silverware ("paper products"). These products are used by Paper Distributors's restaurant customers to package food products for either take-out or in-store consumption. The City of Phoenix ("City") audited Taxpayer's books and records for the period November of 1986 through April of 1990, to determine whether the Taxpayer was complying with the City's privilege and use tax ("sales tax") laws. As a result of the audit the City imposed an additional assessment based upon Taxpayer's sales of paper products to restaurants.[1]

The Court finds that Taxpayer's sales of paper products to restaurants are sales for resale and not within the scope of the City's sales tax imposed by Phoenix City Code § 14–460.

## ANALYSIS

To support its additional sales tax assessment, the City argues that under the Phoenix City Code restaurants are taxed as restaurants, not as retailers; thus, paper sales to restaurants cannot be sales for resale for purposes of the City's sales tax and are therefore taxable at the time of sale. The Taxpayer takes the position that because restaurants "resell" the paper products to their customers the sales of paper products to the restaurants are sales for resale, not retail sales, and are therefore outside the scope of the City's sales tax. The Court agrees with the Taxpayer.

■ Here, we are concerned with the scope of City Code Section 14–460 which imposes the sales tax. We are not concerned with a section providing an exemption from the tax.[2] Taxing sections will be strictly construed in favor of the Taxpayer and against the City. *Sanders v. Folsom,* 104 Ariz. 283, 451 P.2d 612 (1969).

The City imposes a privilege or sales tax upon "every person engaging or continuing in the business of selling tangible personal property at retail." Phoenix City Code § 14–460(a). Section 14–460 of the Code makes no distinction between sales made to restaurants and sales made to other entities. The only issue then is whether Taxpayer's paper sales to restaurants fall within the definition of sales at retail. The Phoenix City Code defines "Retail Sale (Sale at Retail)" as:

> ... the sale of tangible personal property, except the sale of tangible person [sic] property to a person regularly engaged in the business of selling such property.

Phoenix City Code § 14–100. The Code further defines "Sale" as:

> ... any transfer of title or possession, or both ... in any manner or by any means

---

1. There is an inconsistency between the amounts the parties claim as the additional assessment. The City states that it assessed an additional $27,257.24 in privilege taxes for the period April 1, 1987 through April of 1990. Taxpayer states that the additional assessment was $26,668.43. The Court notes this inconsistency for the record but also notes that it is not pertinent to the issue addressed in this opinion.

2. The City also exempts from taxation those "sales of tangible personal property to a person regularly engaged in the business of selling such property." Phoenix City Code § 14–465(a). Here, however, we are concerned with the scope of the section imposing the tax and not with the section granting an exemption from taxation.

whatsoever ... of property for a consideration. . . .

Phoenix City Code § 14–100. In short, under the Code, sales for resale are not "retail sales" and are outside the scope of the City's sales tax. Are the Taxpayer's sales to restaurants sales for resale?

Our Supreme Court has already answered this question finding against the City in *Shamrock Foods Co. v. City of Phoenix,* 157 Ariz. 286, 757 P.2d 90 (1988). Contrary to the City's argument here, *Shamrock* is still the law and it dictates the answer in this case.

In *Shamrock* the Arizona Supreme Court defined the scope of the City's sales tax under sections substantially the same as those found in the present Code.[3] The Court found:

> Code § 14–2 [now Code § 14–460] only applies to retail sales which are sales 'for any purpose other than resale thereof.' *The relevant factor is not whether the product is used as a container, but whether the product is transferred or possessed by the restaurant's customer for a consideration.* So long as we find that the products are transferred to or possessed by the restaurant customer for consideration, a sale has occurred. City Code § 14–1 [now Code § 14–100].
>
> ... When the restaurant customer uses these products as part of their meal, they gain 'title or possession' of the product. Therefore, a 'sale' has occurred.

*Shamrock Foods Co. v. City of Phoenix, supra,* 157 Ariz. at 288–89, 757 P.2d at 92–3 (emphasis added). In finding that the paper items were resold to the customer, the court reasoned:

**3.** The *Shamrock* court construed the scope of former Phoenix City Code § 14–2(a)(10) (now Code § 14–460) which imposed a tax on the business of "[s]elling any tangible personal property whatsoever at retail ..." "Retail sale" was defined in former Code § 14–1 (now § 14–100) as "[a] sale of tangible personal property for any purpose other than the resale thereof." Under former Code § 14–2 (now Code § 14–100) "sale" was defined as "any transfer of title or possession ... for consideration."

A customer knows that the necessary noncontainer items will be provided so that it will be unnecessary for him to carry around eating utensils, napkins or straws to consume his meal. Furthermore, when the customer takes or receives these items, he knows that he is not being given these items free but that their cost is included in the purchase price. *Finally, he acquires both title and possession of these items as part of his purchase of the food products.*

*Id.,* 157 Ariz. at 289, 757 P.2d at 93 (emphasis added). The *Shamrock* court concluded:

> In essence the reality is that Shamrock sells the paper and plastic products to the restaurants, and they, in turn sell these products and food to the ultimate consumer, the restaurants' customers. We conclude that Shamrock's business constitutes the sale of products for resale. . . .

*Ibid.* Unquestionably, supplier sales of paper and plastic products to restaurants, such as those made by Taxpayer, fall outside the scope of the City's taxation of retail sales. On the facts presented to this Court it is undisputed that Taxpayer sells paper products to restaurants who in turn "resell" those products to their customers for consideration.

■ In an attempt to distinguish the present case from *Shamrock,* and to justify its additional assessment on Taxpayer's income from its paper sales to restaurants, the City argues that the Code has been changed since *Shamrock* was decided. It argues that Regulation 14–465.3, enacted after *Shamrock,* changes the Code to bring paper product sales to restaurants within the scope of the City's sales tax.[4] The Court disagrees.

**4.** The City finds support for its position in the minute entry issued by this Court on June 24, 1991 in *City of Phoenix v. Mark's Paper Company,* TX 89–00099. However, the *Mark's* minute entry expressly noted that the City's Regulation 14–2.8, which was virtually identical to present Regulation 14–465.3, had "redefined the exemption from transaction privilege tax of sales for resale." As is set forth in the body of this Court's opinion, there is no need to reach either the exemption sections or exemption related

In addition to setting forth which "container" sales the City deems "exempt" from taxation (Phoenix City Code Reg. 14-465(a), (b) and (f)), Regulation 14-465.3 also provides in pertinent part:

(d) Restaurants are not retailers, and are taxed under Section 14-455. Paper (and similar products, such as plastic or styrofoam) cups, lids, plates, bags, napkins, straws, knives, forks, etc., sold to restaurants and others taxable under Section 14-455 are taxable at the time of purchase.

Phoenix City Code Reg. 14-465.3(d). This Regulation neither changes the scope of Section 14-460 nor does it operate to abrogate *Shamrock.*

First, by its numbering and plain language, the Regulation is clearly denominated as one relating to *exemptions* from the sales tax and the exemption section, Section 14-465. Because paper sales to restaurants are, as a matter of law, sales for resale they are excluded from the scope of the City's sales tax; therefore, it is unnecessary to look for an exemption from the tax or to look to the regulations relating to the exemption section.

 Second, while it is true, as the City argues, that its regulations to Chapter 14 (the Privilege and Excise Tax chapter) are "as much a part of its Code as are the sections" of the Code, the regulations are not on equal footing with the sections of the Code which actually impose the tax. See *Lincoln Property Co. v. City of Tucson,* 131 Ariz. 473, 641 P.2d 1317 (App. 1982). The City's own behavior establishes this fact.

The "regulations" are labelled and published in a manner clearly distinguishing them from the "sections" of Chapter 14 of the City's Code. The regulations are contained in an *appendix* to Chapter 14 while only the sections make up the text of Chapter 14. The City failed to publish the regu-

lations related to Chapter 14 in its official code, the *Charter and Code of Phoenix, Arizona,* until three years after it published the sections comprising Chapter 14.

Additionally, Section 14-500 of the Code states:

(b) The Tax Collector shall prescribe the forms and procedures necessary for the administration of the taxes *imposed by this Chapter.*

(c) Except as provided in this Section, no rule or regulation shall be adopted until approved by formal action of the City Council. (Ord. No. G-2976, § 5.)

Phoenix City Code § 14-500(b) and (c). The Code expressly states that the tax is imposed by the "Chapter." The Chapter is comprised of *sections;* the regulations are only an appendix to that Chapter. The plain reading of Section 14-500 again points out the different weight and functions of the regulations and sections within the Code.

## CONCLUSION

The Taxpayer's business is one of selling paper products for resale. The City's regulations do not change that simple fact. The scope of the City's privilege tax does not encompass such sales. Consequently, Taxpayer is not liable for the additional assessments by the City for its sales of paper products to restaurants.[5]

IT IS ORDERED denying the City's Motion for Summary Judgment.

IT IS FURTHER ORDERED granting the Taxpayer's Cross-motion for Summary Judgment.

This opinion is not a final, appealable judgment and no other order will follow. See *Devenir Associates v. City of Phoenix,* 169 Ariz. 500, 821 P.2d 161 (1991).

---

regulations since the issue before this Court is the scope of the taxing section itself, not the scope of an exemption section. Thus, to the extent it is inconsistent with this opinion, *Mark's* is overruled.

**5.** Because the Court finds for the Taxpayer on the issue of the taxability of the paper product sales, it is unnecessary to reach the second issue raised by Taxpayer relating to the City's audit sampling methodology.